NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-752                                            Appeals Court

      JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 190908  vs.  SEX
                    OFFENDER REGISTRY BOARD.

                          No. 24-P-752.

      Hampshire.      February 4, 2026. – June 5, 2026.

             Present:  Massing, Neyman, & Smyth, JJ.


Sex Offender.  Sex Offender Registration and Community
      Notification Act.  Evidence, Sex offender, Hearsay.  Moot
      Question.  Practice, Civil, Sex offender.


      Civil action commenced in the Superior Court Department on
September 27, 2022.

      The case was heard by Edward J. McDonough, Jr., J.


      Rebecca Rose for the plaintiff.
      Steven M. Killelea for the defendant.


      MASSING, J.  The plaintiff, John Doe No. 190908, challenges

a decision of the Sex Offender Registry Board (board)

reclassifying him from a level two sex offender to a level three

based on allegations that he committed new sex offenses.  In

seeking judicial review of the board's decision, Doe has

primarily argued that the evidence of the new crimes was unreliable hearsay and that the hearing examiner erred in basing the classification decision on such evidence.  During the pendency of this appeal, however, Doe was convicted of the new sex offenses and received a lengthy State prison sentence of incarceration.  Taking judicial notice of Doe's new criminal convictions, we conclude that his challenge to the reliability of the hearsay evidence introduced at his classification hearing about those crimes is moot.  Addressing the remainder of Doe's arguments, we affirm the judgment of the Superior Court upholding the board's decision to reclassify him as a level three sex offender.

Background.  We summarize the facts as set forth in the hearing examiner's decision, "supplemented by undisputed facts from the record."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No. 10800).

In 2006, when he was twenty-two years old, Doe twice committed statutory rape of a fifteen year old girl -- once in a hotel room and once in a makeshift hut in the woods.  Doe was convicted of one count[1] of rape and abuse of a child, in

---

[1] Although Doe was convicted of only one incident of sexual assault, the hearing examiner found the girl's statements that Doe assaulted her a second time to be credible and reliable, and accordingly, she considered these allegations as additional

violation of G. L. c. 265, § 23, and sentenced to two and one-half years in the house of correction. He was classified as a level two sex offender in 2008.

Doe became a father in 2014 and was granted custody of his son in 2018, when the child was about four years old. Doe and the child's mother had a tumultuous relationship characterized by violence against each other and the child, and as a result, the Department of Children and Families (DCF) removed the child from Doe's care in February 2021. DCF placed the child in the custody of his maternal grandmother.

The following August, when Doe was thirty-eight years old, the grandmother reported to the child's therapist, who told the police, that Doe had sexually assaulted the child. According to the grandmother, the child told her that one night Doe showed the child a pornographic movie in the living room of their home and instructed the child to "suck on his nuts," referring to his penis. Eleven days after the grandmother's report, the district attorney's office conducted a forensic interview with the child, during which the child described the incident in substantially

---

sexual misconduct. "[T]he board may consider subsidiary facts that are proved by a preponderance of the evidence, including subsidiary facts resulting in acquittals, where those facts are nonetheless proved by a preponderance of the evidence." Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021).

the same terms.  The child was six years old at the time of the incident.

The hearing examiner found that the consistency of and level of detail in the child's reports to his grandmother and the forensic interviewer indicated they were sufficiently reliable and credible to be treated as fact.[2]  Based on Doe's history of sexual misconduct and the regulatory factors discussed below, the hearing examiner found that Doe posed a high risk of reoffense and a high degree of danger, and that a substantial public safety interest would be served by active dissemination and Internet publication of his personal information.  Accordingly, the hearing examiner reclassified Doe as a level three sex offender.

At the time of the classification hearing and decision, based on the conduct described in the child's reports to his grandmother and the forensic interviewer, Doe had been charged and arraigned in the District Court on one count of aggravated rape of a child with force, in violation of G. L. c. 265, § 22B,

---

[2] Prior to this appeal, Doe sought judicial review of the hearing examiner's decision reclassifying him as a level three sex offender.  A Superior Court judge remanded the matter to the board for "a more thorough exploration of the reliability of the hearsay" regarding allegations of sexual misconduct involving Doe's son.  As a result, the hearing examiner issued an amended reclassification decision.  The amended decision was upheld by a different Superior Court judge and is the subject of the current appeal.

and dissemination of matter harmful to minors, in violation of G. L. c. 272, § 28.  He was subsequently arraigned in the Superior Court on indictments charging aggravated rape and abuse of a child, in violation of G. L. c. 265, § 23A, as a subsequent offender, in violation of G. L. c. 265, § 23B, and dissemination of matter harmful to minors, and the District Court complaint was dismissed.  While this appeal was pending, Doe was convicted of all counts.[3]

Discussion.  1.  Reliance on hearsay.  As noted, Doe's primary claim on appeal is that the hearing examiner based her reclassification decision on the child's hearsay description of the new offenses, contained in the grandmother's and forensic interviewer's reports, and that these hearsay reports were not sufficiently reliable to constitute substantial evidence.  After oral argument, we asked the parties to file supplemental memoranda addressing whether Doe's convictions of the conduct described in these reports rendered moot his challenge to their reliability.  We conclude that they have.[4]

---

[3] Obviously, this fact was not before the hearing examiner or the Superior Court.  We nevertheless exercise our discretion to take judicial notice of Doe's subsequent convictions.  See Jarosz v. Palmer, 436 Mass. 526, 530 (2002); Mass. G. Evid. § 201(b)(2) & note (2026).

[4] We also asked the parties to address whether Doe's incarceration rendered his entire challenge to the classification decision moot.  Both parties argued that it did not, as the final classification decision is administratively

As a threshold matter, "hearing examiners may exercise their discretion to admit and give probative value to evidence 'if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs.'" Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 26 (2021), quoting G. L. c. 30A, § 11 (2). This may include hearsay evidence, "if it bears sufficient indicia of reliability." Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe No. 523391). Here, we need not decide whether the hearsay reports relied upon in this case bear such indicia, because Doe's criminal convictions for the rape of his son and dissemination of harmful matter have resolved the issue for us. "In a criminal case, of course, the Commonwealth must prove the elements of each crime charged beyond a reasonable doubt. By comparison, at Doe's classification hearing the examiner could credit those facts that are proven by a preponderance of the evidence." (Citation omitted.) Doe, Sex Offender Registry Bd.

---

significant and Doe will have no other opportunity to challenge it. We are persuaded that the remaining challenges to the classification decision are not moot. Cf. Commonwealth v. Pena, 462 Mass. 183, 186-188 (2012) (mootness of question whether probationer violated terms of probation does not render moot other issues pertaining to consequences of probation violation).

No. 356011 v. Sex Offender Registry Bd., 88 Mass. App. Ct. 73, 80 (2015) (Doe No. 356011).

Although this scenario has not yet been addressed in any published decision concerning judicial review of a sex offender's final classification, it occurs frequently in the context of appeals from probation violation hearings. See Doe No. 356011, 88 Mass. App. Ct. at 80 (likening rules for consideration of hearsay at probation violation hearings to those at sex offender classification hearings). When a probation violation is based on allegations of new criminal conduct, a subsequent conviction of that crime "renders moot an appellate claim that a judge erred in making the factual determination that a probationer violated the terms of his probation," Commonwealth v. Milot, 462 Mass. 197, 201 (2012), and likewise renders moot any claim that the finding of a violation was based on unreliable hearsay, see id. at 201-202. See also Commonwealth v. Pena, 462 Mass. 183, 187 (2012) (subsequent conviction or guilty plea renders moot question whether probationer violated terms of probation by committing new offense).

By the same reasoning, Doe's convictions render moot his claim that the hearing examiner erred in finding that Doe committed the sex offenses described in the hearsay reports. We recognize that the analogy to probation violations is not

perfect, as the very commission of a new crime while on probation is itself a violation, whereas in a sex offender classification decision, it is not merely the commission of the crime, but the means and manner in which it was committed that informs the hearing examiner's application of the regulatory factors.  Theoretically, in any given case, a subsequent conviction might not confirm the details included in the hearsay reports on which the hearing examiner relied.  But that is not the case here.  Doe's convictions of rape and abuse of a child as a subsequent offender and of dissemination of matter harmful to minors confirmed the salient aspects of Doe's new crimes as described in the hearsay reports:  the penetration of the victim's mouth with Doe's penis, which the hearing examiner found relevant to factor 19 (level of physical contact), while showing the victim a pornographic film; the crimes' occurrence after Doe had been convicted of a prior sex offense, which the hearing examiner found relevant to factor 2 (repetitive and compulsive behavior); and the identity, age, and sex of the victim, which the hearing examiner found relevant to factors 3, 17, 18, 21, and 22 (adult offender with child victim, male offender against male victim, extravulnerable victim, diverse

victim types, and number of victims).  See 803 Code Mass. Regs. § 1.33 (2016).[5]

Relatedly, the hearing examiner did not abuse her discretion in denying Doe's motion in limine to exclude hearsay evidence contained in records from DCF.  To the extent Doe argues the records are unreliable insofar as they describe the child's reports of sexual abuse, that challenge is moot for the reasons already discussed.  The hearing examiner's reliance on the other information contained in these records, including as to the neglect and physical abuse of the child by both his parents, was also proper.  Though such reports may be inadmissible at a criminal trial, the laws governing the board expressly permit DCF to share with the board "information that may be relevant to the board's determination or reevaluation of a sex offender's level designation."  G. L. c. 6, § 178K (4). The DCF records do not present "[i]ndicia of unreliability," such as "failure to identify the source of information, a lack of detail, [or] a lack of information about the circumstances in which the statements were made" (emphasis added).  Doe No.

---

[5] We refer to the board's classification factors by number, or name and number, it being understood that each of them appears in the corresponding subpart of 803 Code Mass. Regs. § 1.33 (2016).  (We rely on the version of the regulations in effect at the time of the hearing examiner's decision.  The board's regulations were updated in 2025.)

523391, 95 Mass. App. Ct. at 89-90. To the contrary, the records are thorough and detailed as to the chain of reporting, specifying dates and names where relevant. Therefore, insofar as the hearing examiner considered hearsay evidence in the DCF records other than the facts established by Doe's criminal convictions, the evidence was sufficiently reliable to support her reclassification decision.

2. Application of regulatory factors. Doe also argues that the record does not support the hearing examiner's application of several risk-elevating factors, specifically factor 9 (alcohol and substance abuse), factor 10 (contact with criminal justice system), factor 11 (violence unrelated to sexual assaults), factor 15 (hostility towards women), and factor 16 (public place).

The board "is constitutionally required to prove the appropriateness of an offender's risk classification by clear and convincing evidence." Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298 (2015). "A reviewing court may set aside or modify [the board]'s classification decision where it determines that the decision is in excess of [the board]'s statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass.

643, 649 (2019), citing G. L. c. 30A, § 14 (7). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Doe No. 10800, 459 Mass. at 632, quoting G. L. c. 30A, § 1 (6). "A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor, and . . . a reviewing court is required to 'give due weight to [the examiner's] experience, technical competence, and specialized knowledge.'" Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014), quoting G. L. c. 30A, § 14 (7).

Doe argues that it was arbitrary and capricious and an abuse of discretion for the hearing examiner to apply factors 9, 10, and 11 in assessing his risk of reoffense. Doe's criminal record reflects, in addition to his sex offenses, entries related to distribution of marijuana, possession of cocaine, unlawful possession of a class E substance, trespassing, assault and battery, and receiving stolen property. Doe argues that any nexus between this past criminal conduct and his current risk of reoffense had been severed at the time of the hearing, because the relevant offenses were over a decade old and some had been dismissed or nol prossed. However, the regulations plainly do not require the hearing examiner to demonstrate such a nexus before considering an offender's criminal history. "Factor 9

applies when the sex offender has a history of substance abuse." 803 Code Mass. Regs. § 1.33(9)(a). Factors 10 and 11 require the hearing examiner to consider the "dates" and "frequency" of related conduct, respectively, but neither places a time limit on the consideration of such conduct. 803 Code Mass. Regs. § 1.33(10)-(11). Furthermore, hearing examiners are statutorily permitted to consider all aspects of an offender's criminal history, including "instances of conduct that did not result in a conviction. . . . for example, uncharged conduct . . . and conduct underlying a matter resulting in a continuation without a finding" (citation omitted). Doe No. 356011, 88 Mass. App. Ct. at 79. Even so, the hearing examiner took Doe's specific circumstances into account in her application of the factors, concluding that due to the age of Doe's substance use related offenses, factor 9 applied with only "minimal weight." See Doe, Sex Offender Registry Bd. No. 528042 v. Sex Offender Registry Bd., 496 Mass. 437, 447 (2025) (Doe No. 528042) (no abuse of discretion where hearing examiner applied factor 9 with only minimal weight in light of age and sporadic nature of related charges). Although the hearing examiner did not list the precise disposition of every charge, it is apparent from her detailed summary of Doe's criminal history, history of substance use, and history of domestic abuse that "the classification is based on a sound exercise of informed discretion rather than the

mechanical application of a checklist or some other reflex." Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).  We therefore discern no abuse of discretion in the application of factors 9, 10, and 11.

Likewise, the record supports the hearing examiner's application of factor 15.  Factor 15 requires the hearing examiner to consider whether the sex offender "has multiple abuse prevention orders or harassment prevention orders taken out by different women at different times."  803 Code Mass. Regs. § 1.33(15)(a).  Though Doe concedes that "[t]here are four restraining orders on Doe's record," from three different women, he argues that the circumstances surrounding these orders -- their age, their length, and the reporting parties -- cut against the application of factor 15 in this case.  "[T]he plain text of the regulation forecloses Doe's argument."  Doe No. 528042, 496 Mass. at 446.  Where, as here, the record contains evidence that three different women obtained abuse prevention orders against Doe in different years, this evidence alone "is sufficient to conclude that the hearing examiner's application of factor 15 was not an abuse of discretion."  Id.

Finally, Doe contends that the hearing examiner improperly applied factor 16, because the evidence did not support the hearing examiner's finding that both incidents of Doe's sexual

misconduct occurred in an "area maintained for or used by the public and . . . that is open to the scrutiny of others or where there is no expectation of privacy."  803 Code Mass. Regs. § 1.33(16)(a).  We disagree.  First, the record contains police reports and a victim statement asserting that Doe raped his first victim in a "makeshift hut" or an "abandoned club house" in the woods, a five-minute walk from the girl's homeschooling facility and a nearby donut shop.  The girl's friends had built the hut within view of a path through the woods.  Even where a sex offender seeks the limited seclusion of a wooded area, misconduct is "nevertheless sufficiently public to support the hearing examiner's findings and application of factor sixteen" with full weight.  Doe, Sex Offender Registry Bd. No. 527962 v. Sex Offender Registry Bd., 496 Mass. 543, 551 (2025) (application of factor 16 supported where "conduct in question occurred in a wooded area . . . near a school," even if "the school may not have been in use at the time of the offenses").  Based on the information in the record -- particularly the proximity of the hut to the school, the path, and local businesses -- the hearing examiner could properly infer that Doe had "no expectation of privacy" in the hut and that taking the girl to the hut did not constitute "a clear and concerted effort to conceal his offending behavior from others."  803 Code Mass. Regs. § 1.33(16)(a).

Second, the record contains sufficient evidence indicating that the living room of Doe's home, where he sexually abused his son, was a "public place" for the purposes of factor 16. Factor 16 may be relevant even where sexual misconduct occurred in a private home. See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 789 (2006) (factor 16 properly applied to offenses committed in "a living room or a bedroom in a residence"; rejecting argument that definition of "public place" be limited to offenses committed in "truly public places, like parks or schools"). The central question is whether that misconduct occurred in an area where the high likelihood of detection indicates an offender's "lack of impulse control or sexual deviation." Id. In this case, Doe claims that he and the child were alone in the home at the time of the alleged assault and that the child's mother no longer lived there, justifying Doe's expectation of privacy. However, the record shows that even if the mother was not living there at the time, she still had frequent access to the home. In fact, the child told the forensic interviewer that the abuse occurred while his "mom went to the store." Numerous DCF reports corroborate the mother's continued presence in the home, including in early 2021, around the time the grandmother estimated the abuse had occurred. Based on this evidence, the hearing examiner could logically conclude that the child's

mother could have entered the room at any time, posing a threat of detection that calls for the application of factor 16.  See id.; Doe, Sex Offender Registry Bd. No. 390261 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 219, 225 (2020) (examiner did not err in considering factor 16 where offender sexually assaulted victim at night, in bed, next to her sleeping brother).

As substantial evidence supports the hearing examiner's decision to apply each of the challenged factors, we see no reason to disturb the classification decision.

Judgment affirmed.